No. 36,504

C. H. ARENSMAN, *Appellee, v.* FRANK KITCH, *Appellant.*

(165 P. 2d 441)

Opinion filed January 26, 1946.

*H. O. Trinkle, Ray H. Calihan* and *Royland H. Tate,* all of Garden City, were on the briefs for the appellant.

*John A. Etling,* of Kinsley, argued the cause, and *W. N. Beezley,* of Kinsley, was on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: Plaintiff brought this action to recover certain grain rent which he claimed was due him under the terms of an ordinary farm lease. The defendant, who is the tenant named in the lease, filed an answer and cross petition. In such answer he denied generally plaintiff's claim. By his cross petition he claimed damages alleged to have been sustained by certain of his crops as a result of plaintiff's refusal to permit him to use an irrigation plant located on land owned by plaintiff but not on the premises which defendant was farming.

The cross petition was first attacked by a motion to make more definite and certain, its principal purpose being to require defendant to reveal the nature, date, consideration, and terms of the contract relied on by him as according him the right to use such irrigation facilities. Two paragraphs of the motion were sustained. Five others were successfully resisted. Defendant then filed an amended cross petition. Later he filed an amendment to his amended cross petition. Thereafter plaintiff demurred to the amended cross petition as amended for the reason it failed to state facts sufficient to constitute a cause of action. This demurrer was sustained and the appeal is from that ruling and judgment.

Facts as relied on by the parties might be related at length, or for that matter summarized, but by omission of their formal parts pertinent portions of the pleadings are so brief and to the point as to permit their inclusion in this opinion without undue prolongation and at the same time give to its readers a clear and concise word view of the picture in the language of its creators.

Since the recital of some of its allegations is in the interest of clarity, and admissions of the defendant with respect thereto are important, we first turn to the petition. Paragraphs two and three read:

"2. That on or about the first day of March, 1943, the said defendant entered into the possession of the following described real property in Gray County, Kansas, to wit: The South Half (S ½) of Section Eight (8), Township Twenty-seven (27), Range Thirty (30), as the farm tenant of one Otis McVaugh under the terms of a written lease, dated November 7, 1942, executed by said defendant and said Otis McVaugh, a copy of which is hereto attached, marked 'Exhibit A' and made a part hereof; that at the time of the execution of said lease and at the time said defendant entered into the possession of said premises as tenant aforesaid, said real estate was owned by one Violet McVaugh, wife of said Otis McVaugh, and that in making said lease, the said Otis McVaugh was the agent of said Violet McVaugh and was acting for her in making such lease.

"3. That subsequent to the time said defendant entered into the possession of said real estate as tenant aforesaid, said plaintiff purchased said real estate from said Violet McVaugh and that on or about the . . . day of January, 1944, the said Violet McVaugh, together with the said Otis McVaugh, her husband, conveyed said real estate to said plaintiff by warranty deed and that said plaintiff has ever since been and now is the absolute owner thereof and entitled to the rents therefrom; that said defendant was advised and informed of such change of ownership and thereafter continued in the possession and occupancy of said real estate as the tenant of said plaintiff."

Exhibit "A" referred to in paragraph two is an ordinary farm lease, the terms of which leased the land therein described for a period of one year from March 1, 1943, to March 1, 1944, and provided for the payment of crop rentals on a share basis. Its provisions make no mention of irrigation rights of any character, and of a certainty, do not purport even by inference, or otherwise, to grant defendant those claimed by him in his respective pleadings.

Other portions of the petition merely recite the amount of rent claimed by plaintiff to be due and payable for crops planted and harvested during the year 1944 and are of no consequence here. It should, however, be noted—although all pleadings are silent on the subject—that defendant, since plaintiff's claim involves only the landlord's share of the 1944 wheat crop, must have held over after expiration of the term provided for by the written lease.

We see no necessity for detailing the cross petition. Except for one paragraph, and another which under the issue raised by the demurrer is not material, its averments are the same as those which appear in the pleading filed by defendant after the original one was motioned.

Only a few allegations were added to the first paragraph of the amended cross petition. Those additions for identification purposes will be italicized. Thus the quotation which follows will dis-

close not only the averments to be found in the first paragraph of the cross petition as originally drafted, but at the same time will reveal all allegations of the first paragraph of the cross petition as amended. Such paragraph reads:

"For his cross petition the defendant alleges that he entered into possession of the land described in paragraph 2 of plaintiff's petition as alleged in said paragraph 2; that the plaintiff was the owner of land adjoining said described land in said lease and that the plaintiff and the said Otis McVaugh and Violet McVaugh had installed on plaintiff's land a pumping plant, and that said pumping plant was by *oral agreement between said persons* to be used jointly by said plaintiff and this defendant as tenant of McVaugh in the irrigation of the land described in the lease attached to plaintiff's petition; that under the terms of the said arrangement regarding said irrigation plant, this defendant was entitled to use said plant for irrigation purposes on his land one-half of the time during the irrigation season. *That the exact date of said arrangement or agreement regarding the use of said plant is unknown to this defendant, but said date is well known to the plaintiff and is peculiarly within his knowledge. That the consideration therefor, was payment by the said McVaughs of one-half the cost and expense of the installation of said plant, said consideration having been fully paid and said agreement having been fully performed as shown by the records in the office of the Register of Deeds of Gray County, Kansas."*

Inasmuch as defendant's rights depend primarily upon the facts as alleged by him in the paragraph just quoted there is no occasion to here relate or hereinafter refer to other allegations of his amended cross petition except to state that the damages claimed by him for injuries to crops as a result of the refusal of irrigation privileges by the plaintiff are limited to such crops as were planted and had matured during the year 1943 while the written lease was in force and while the McVaughs were still the owners of the leased premises.

Within a few days of the filing of the amended cross petition the defendant of his own volition filed an amendment to his amended cross petition, which reads:

"Comes now the defendant, Frank Kitch, and amends his amended cross petition by adding to the first paragraph thereof, and making a part thereof, the following:

"Defendant does not know the exact terms of said agreement between Arensman and McVaugh, but said plaintiff and McVaugh both orally informed the defendant that he, as tenant of McVaugh was privileged to use said pumping plant one-half of the time for irrigating the land in question. That pursuant thereto this defendant did use said plant during the month of June, 1943. That this defendant does not positively know the date of said agreement but believes that said agreement was made prior to the date of the lease between this defendant and the said McVaugh."

Appellant's sole specification of error is that the trial court erred in sustaining appellee's demurrer to his amended cross petition as amended.

At the outset, this opinion will be simplified by stating that, notwithstanding the pleadings so show and the parties place some reliance thereon, the fact the appellee purchased the leased premises from the appellant's landlord in January, 1944, has no bearing on a decision of the issue presented by the specification of error. As has been heretofore mentioned, appellee under allegations of his petition seeks recovery of a share of the wheat crop raised on the land by appellant as his tenant after the original term of the written lease had expired while the latter does not pretend to claim he had any right to water from any source while holding over under the terms of such instrument. All he contends is that he was damaged by appellee's refusal to permit him to obtain water from other land then owned by appellee for the purpose of irrigating crops planted on the leased premises in 1943. We take judicial notice of the fact those crops had matured prior to the date appellee acquired title to the real estate described in the lease and that they required no water for irrigation purposes under any theory from such date until March 1, 1944. Thus, although a cursory glance at the pleadings might at first indicate to the contrary, a careful examination of all allegations there to be found leads to the inescapable conclusion that appellant's right of recovery under the oral contract on which he relied, as in fact is fairly to be inferred from the averments of his cross petition, is to be determined not only by the time but also by the conditions and circumstances under which he occupied the leased premises as a tenant of the McVaughs.

Whatever our decision is to be it must, of course, be reached after giving consideration to certain fundamental principles which are applicable in all cases involving the construction of pleadings. One of these is that the allegations of an answer which assumes to set up either a counterclaim or a set-off must state a cause of action with the same particularity, completeness and exactness as if the defendant were the plaintiff and that failure to do so makes such pleading subject to demurrer. This has long been true in this jurisdiction (*Mallory v. Leiby,* 1 Kan. 97 and *Allen v. Douglass,* 29 Kan. 412).

See, also, *Beeler & Campbell Supply Co. v. Warren,* 149 Kan. 135, 86 P. 2d 482, where it was held:

"A cross action by a defendant against the plaintiff for affirmative relief on a matter entirely unrelated to the cause of action contained in the petition is equivalent to a petition and must state its own cause of action. . . ." (syl. ¶ 3.)

Another such rule is that where a motion to make definite and certain is successfully resisted a pleading must thereafter, when tested by demurrer, be strictly construed against the pleader as to all matters covered by the motion (*State Highway Comm. v. American Mut. Liability Ins. Co.*, 146 Kan. 187, 70 P. 2d 20; *Lofland v. Croman*, 152 Kan. 312, 103 P. 2d 772; *Sanik v. Shryock Realty Co.*, 156 Kan. 641, 135 P. 2d 545 and *Kinderknecht v. Hensley*, 160 Kan. 637, 164 P. 2d 105). Its corollary, although not so frequently stated, is that when a motion to make more definite and certain has been sustained and a pleading amended, such pleading will be strictly construed and given the construction which is most unfavorable to the pleader. So, under the rule we pause to comment that when appellant filed his amendment to his amended cross petition his cause of action as pleaded by him then became subject to the construction that the oral contract on which he relied for recovery was one which had been entered into between the parties alleged to have made it prior to the date on which he entered into the lease contract with the McVaughs, which agreement under the admission of his answer was his authority for entering into possession of the real estate described therein as the McVaughs' tenant.

Briefly stated, on questions apropos to the trial court's ruling in sustaining the demurrer, when considered together and carefully examined, appellant's various pleadings—his cross petition—his amended cross petition—and his amendment to his amended cross petition—simply charge that through some undisclosed agreement he had with the McVaughs such individuals entered into an oral contract with appellee to participate in the installation of a pumping plant on land owned by the latter which was to be used jointly by the appellee in the irrigation of his own land and by the appellant *as McVaughs' tenant* in the irrigation of their land; that such agreement was fully performed by the parties thereto (appellee and McVaughs); that thereafter appellant entered into a written agreement with McVaughs, in the form of an ordinary farm lease, which contained no provisions pertaining to irrigation rights or other reference to the oral contract, whereby he leased McVaughs' land and agreed to farm it and pay crop rentals as required by its terms;

that both appellee and the McVaughs (without stating any date) orally informed him that as such tenant he was privileged to use the pumping plant during June, 1943; and that thereafter appellee refused to permit him to use it for irrigation purposes.

From what has just been related it is apparent that whatever claim appellant had to water originating from appellee's land is necessarily based upon such rights as he acquired from the McVaughs as their tenant. The very most that can be said for him is that under the terms of the oral contract on which he relies he was a contingent beneficiary. Equally apparent is the fact he could not have compelled McVaughs to lease him their land, either with or without water rights. Neither was he obliged to rent it with water rights and pay the rent required under such circumstances nor for that matter to lease it at all. Before he could invoke the aid of the terms of the oral contract it was incumbent upon him to bring himself within its scope. Obviously, therefore, the question of whether he did so depends upon the terms of his lease agreement without which he could have acquired no claim against the appellee under any circumstances.

Turning now to consideration of such agreement, as we have heretofore stated it was an ordinary lease contract which was entered into subsequent to the date of the execution of the oral contract and did not purport, even by inference, to grant water rights of any character to the appellant.

No doctrine is better established or more frequently applied than the one that where parties have carried on negotiations, and have subsequently entered into an agreement in writing with respect to the subject matter covered by such negotiations, the written agreement constitutes the contract between them and determines their rights (*Hudson v. Riley,* 104 Kan. 534, 539, 180 Pac. 198; *Hudson State Bank v. Haile,* 130 Kan. 323, 286 Pac. 228; *Grantham v. Hanenkratt Lead & Zinc Co.,* 131 Kan. 535, 542, 292 Pac. 757 and *Continental Supply Co. v. Morgan,* 133 Kan. 121, 123, 298 Pac. 790).

With specific reference to lease contracts this court has recognized and applied the rule on at least two occasions in the not too remote past.

*McElroy v. Ball,* 149 Kan. 284, 87 P. 2d 608, was a case where the district court had directed the jury to return a verdict for the plaintiff after striking out evidence offered by the defendant for the purpose of varying the terms of a lease. The issue there, and the

decision of this court on appeal, is clearly set forth in the last three paragraphs of our opinion, where it was said:

"Appellant contends, also, that the trial court erred in striking out certain evidence. The written lease is not set out in the abstract. Appellee testified it was dated February 15, 1935, the term commencing March 1, 1935. Appellant testified: 'I leased this property from Mrs. McElroy March 15, 1935,' etc.

"He further testified that a part of the land had not been farmed and that the landlady agreed he should have credit on the lease if he would keep the weeds down on that ground; also, that he was to have credit for doing some work on a roadway on the place which it was necessary he do in order to move in, and that he was also to have credit for filling in around the buildings. On cross-examination it was developed that all of the claimed agreements were made on the same day the lease was executed and before it was delivered by appellee to appellant. The trial court ruled that such agreements, if made, should have been included in the lease, and struck out the testimony with respect thereto, holding in effect that appellant was attempting to vary the terms of a written instrument.

"The ruling was correct. Appellant's contentions cannot be sustained. The judgment of the trial court is affirmed." (p. 286)

To the same effect is *Sanik v. Shryock Realty Co.*, 156 Kan. 641, 135 P. 2d 545, where, in affirming the ruling of a trial court in sustaining a demurrer to the petition, we said:

". . . Furthermore, even assuming the authority of Spaulding to lease the premises for the owner, the time when he saw the household furniture set up in the rear part of the building and when she and her mother indicated their intention to use that part as living quarters was prior to the execution of the written lease. Under no view, therefore, could it be contended that the written lease was modified by any oral agreement." (p. 644.)

In view of the doctrine, and under the decisions to which we have just referred, we have no difficulty in concluding such rights as appellant may have had to use water from the land of one other than his lessor for irrigation purposes *as the tenant* of such lessor, were merged in the subsequently executed written agreement. Under the terms of such contract he could not have compelled his landlord to furnish him with irrigation facilities originating from appellee's land, and, since his claim to water from such land depended on his rights as a tenant on the land owned by his landlord, he could not require the appellee to furnish him more than he was entitled to under the terms of the lease fixing his rights as a tenant. Having no cause of action against his landlord for failing to furnish him with water it follows he had none against the appellee and the rul-

ing of the trial court in sustaining the demurrer to his cross petition was proper.

The fact that both appellee and landlord advised appellant he was privileged to use water from the appellee's land is of no consequence under the circumstances as pleaded. If that information was communicated to him prior to execution of his lease he failed to provide for such privilege when it was executed. If subsequent thereto, it was without consideration so far as appellee was concerned and unenforceable as a contract. (*Coder v. Smith*, 156 Kan. 512, 134 P. 2d 408; *Threshing Machine Co. v. Francisco*, 106 Kan. 704, 189 Pac. 981 and *Farmers Equity Co-op Ass'n v. Tice*, 122 Kan. 127, 251 Pac. 421.)

Likewise inconsequential is the allegation to be found in the amendment to the amended cross petition to the effect that in June, 1943, appellee permitted appellant to use water from his land for irrigation purposes. Under our decisions water in the land is a part of the land itself and any enforceable claim to water from appellee's real estate based upon circumstances and conditions arising subsequent to the date of the execution of appellant's lease would have to be based upon a grant in writing (G. S. 1935, 33-106).

In *State, ex rel., v. Board of Agriculture*, 158 Kan. 603, 149 P. 2d 604, we said:

"Under the above authorities underground waters are part of the real property in which they are situated. The owner of land may convey or grant the underground water, or the right to take it from the land, by an appropriate instrument in writing to the same extent that he might convey or grant any other portion of the real property; or a party, having the right of eminent domain, may appropriate underground water to his use by condemnation proceedings." (p. 609.)

See, also, *Shamleffer v. Peerless Mill Company*, 18 Kan. 24, 33; *City of Emporia v. Soden*, 25 Kan. 588; *Jobling v. Tuttle*, 75 Kan. 351, 360, 89 Pac. 699; *Hollingsworth v. Berry*, 107 Kan. 544, 545, 192 Pac. 763.

The added allegation to which we have heretofore just referred amounts to no more than a statement that appellee had granted appellant a license to use water from his land. Such a license under conditions as pleaded could be revoked by appellee at any time without subjecting him to liability for damages. (*Ross v. Cook*, 71 Kan. 117, 80 Pac. 38.) See, also, *Insurance Co. v. Haskett*, 64 Kan. 93, 67 Pac. 446 and *McCullagh v. Rains*, 75 Kan. 458, 89 Pac. 1041.

In conclusion it should be stated we are not unmindful of the fact the parties devote most of their briefs to an able discussion on the question of whether the oral contract between the McVaughs and appellee was within the statute of frauds and that the trial court's ruling on the demurrer was based on that premise. In view of our decision we do not deem it necessary to decide that question and, of course, reasons given by the trial court for its decision become immaterial so long as its ruling is correct for any reason. (*Waddell v. Woods,* 160 Kan. 481, 484, 163 P. 2d 348 and *Greep v. Bruns,* 160 Kan. 48, 60, 159 P. 2d 803 and cases there cited.)

The judgment is affirmed.